## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CWC COMMERCIAL | ) | |
| WAREHOUSING, LLC; UNITED | ) | |
| FARMERS PLANT FOOD, INC., | ) | |
| d/b/a FARMERS AG CENTER; | ) | |
| AND WAYNE GRISWOLD d/b/a | ) | |
| STURDIGUNS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:15-CV-03312-MDH |
| | ) | |
| NORCOLD, INC., and RELIABLE | ) | |
| IMPORTS AND MOTORHOMES, LLC | ) | |
| d/b/a RELIABLE RV, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on Defendant Norcold's Motion for Summary Judgment on Plaintiffs' Claims. (Doc. 123). The motion has been fully briefed and is now ripe for review.

## BACKGROUND

The background of this case centers around a fire that occurred on approximately June 30, 2014 when a recreational motor home ("RV") caught on fire and burned while it was parked in a commercial warehouse. The fire not only caused damage to the RV, but also to the commercial warehouse resulting in property damage. Plaintiffs claim Norcold is liable for the property damage caused by the fire. Plaintiffs allege Norcold manufactured, designed and/or assembled refrigerators, including the one that was located in the RV in this case. Plaintiffs

further allege sometime beginning in 2002 Norcold issued a recall regarding fire hazard risks caused by the refrigerators installed in RVs. Plaintiffs allege the Norcold refrigerator in this case failed, causing the fire that consumed the RV and the building, including personal property of the Plaintiffs.

Plaintiffs' two remaining claims against Norcold include a claim for negligence and strict products liability.[1] Defendant argues that Plaintiffs' strict liability claim, based on the allegation that the refrigerator's boiler tubes were defectively designed and as a result caused the fire, fails because the refrigerator was altered and the high temperature sensor (HTS) safety device that the recall required was mis-wired when installed by a third party. Second, Defendant argues Plaintiffs' negligence claim based on defective design fails because either Norcold did not have knowledge of a defective design, or the mis-wiring of the recall safety device was a superseding cause of the fire.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

---

[1] Plaintiffs state they have agreed to voluntarily dismiss Count III, Breach of Warranties, against Norcold. (Doc. 136, p. 5).

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

Plaintiffs argue Norcold's admissions as set forth in the Statement of Uncontroverted Facts prevent summary judgment, or at a minimum raise factual questions to defeat summary judgment. Plaintiffs argue that Norcold has admitted the following: that its refrigerators were defectively designed and unreasonably dangerous; the defective design causes the refrigerators' boiler tubes to corrode, break open and spew flammable gases regardless of the consumers' actions and without the consumers' knowledge; the recall safety valve was not designed to stop the boiler tube corrosion or fix this defect and was only intended to cut power; and that 40% of the defective refrigerators cause fires and the problem has been known since the 1990s. Plaintiffs contend Defendant's admissions are enough to create a factual question for a jury.

First, a review of the record before the Court does not reflect such clear "admissions" from Norcold as set forth in Plaintiffs' response. Nonetheless, Norcold responds by stating the refrigerator at issue was obtained from a salvage yard and some parts of the Norcold refrigerator were installed on the salvaged unit by defendant Reliable RV. Norcold states Plaintiffs cannot

3

produce evidence that the refrigerator was in an original state, and not substantially altered, to establish liability. Further, Norcold states the HTS safety device that was installed after the recall was not properly wired and therefore was another superseding event relieving Norcold of liability. As discussed herein, Norcold focuses its arguments on whether Plaintiffs can prove damages as a result of Norcold's alleged defective product as it existed at the time the refrigerator was sold.

### 1. Strict Liability Claim

The parties agree that in order for Plaintiffs to prevail on their claim for damages based on strict liability for an alleged defective product they must prove the following: "(1) defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Jasinski v. Ford Motor Co.*, 824 S.W.2d 454, 455 (Mo. Ct. App. 1992) (internal citations omitted).

Defendant contends that Plaintiffs "must produce evidence that neither [they] nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred." *Citing, Jasinski v. Ford Motor Co.,* 824 S.W.2d at 455. Defendant contends Plaintiffs bear the burden of proving that subsequent changes or alterations in a product did not create a defect that could be the proximate cause of the damages.

First, Defendant relies on *Waggoner by Waggoner v. Mercedez Benz of N. Am., Inc.*, 879 S.W.2d 692, 695–96 (Mo. Ct. App. 1994) a case where the Missouri Court of Appeals affirmed a motion for directed verdict after the plaintiff failed to provide evidence to prevail on her claim. In *Waggoner* the court stated, "Plaintiffs had to produce evidence that the valve had not been

4

altered in such a way that would create a defect that could be the proximate cause of the damages incurred." *Id.* (internal citations omitted). The Court found, after reviewing the evidence presented to the trial court, that Plaintiff did not produce evidence that the allegedly defective product had not been altered in such a way to create a defect causing the damages. *Id.* The Court stated, with regard to plaintiff's evidence, plaintiff did not meet this burden, and failed to provide evidence "regarding the car's service and repair history from 1978 to 1986, during which time the car was driven approximately 158,000 miles. *Under these circumstances,* plaintiffs failed to present a submissible case." *Id.* (*emphasis added*).

Defendant argues in this case the RV did not have the original Norcold refrigerator. Rather, the refrigerator in the RV at the time of the fire was obtained by defendant Reliable RV. Defendant states that Reliable RV obtained a refrigerator at a salvaged and used parts store and then used parts from the original inoperable Norcold refrigerator in the RV at issue. Defendant further contends because there is no evidence of how the used refrigerator was maintained, operated or serviced, similar to *Wagonner,* that Plaintiffs cannot meet the elements of their cause of action. In essence, Defendant maintains that Plaintiffs cannot provide evidence of what happened to the original Norcold refrigerator, or the salvaged refrigerator, prior to its installation by Reliable RV.

In addition, Defendant argues due to the recall on its refrigerators there was an HTS safety device that could be installed to prevent fires. It appears the refrigerator at issue did have an HTS safety device. However, Defendant argues the safety device was mis-wired, and as a result failed to prevent the fire, in turn creating a superseding cause that relieves Norcold of any liability. *Citing, Winters v. Sears, Roebuck and Co.,* 554 S.W.2d 656 (Mo. App. 1977). Norcold believes that the HTS safety device was bypassed by a third-party and therefore Norcold is not

liable for the improper manner the HTS was installed. Norcold believes this is just another example of a substantial alteration and misuse of its product after it left the manufacturer, and therefore the product cannot be found to be working as intended and designed by Norcold.

In response, Plaintiffs argue it is Norcold's original defective boiler tubes that are at issue in this case. Therefore, whether or not other parts of the refrigerator involved in the fire were not original is irrelevant. Plaintiffs further contend they do not need to produce service records for the refrigerator because the evidence shows that the boiler tubes were defective when they left Norcold's factory. Plaintiffs argue the evidence will establish the boiler tubes are part of a closed, sealed system and therefore are unalterable; that if they were altered the refrigerator would not operate and it was working on the night before the fire; and that their expert will also testify that the boiler tubes were intact and unaltered.

In *Dorman v. Bridgestone/Firestone, Inc.,* 992 S.W.2d 231 (Mo. Ct. App. 1999), the Missouri Court of Appeals found questions of fact existed regarding plaintiff's claim that he was injured as a direct result of a defective condition that existed when Defendant sold the product based on a design defect. While under this theory plaintiff "must prove there has been no substantial change in the condition of the RH5 wheel involved in the accident," "if a jury could infer the existence of a defect from evidence which points 'reasonably to the desired conclusion and tend(s) to exclude any other reasonable conclusion', then plaintiff has made a submissible case." *Id.* at 238 (internal citations omitted). The court reasoned that a jury could determine that plaintiff's injury was caused by a design defect, rather than another cause based on expert testimony and other evidence. *Id.*

Here, the Court finds there is a factual question with regard to the history of the refrigerator at issue and the cause of the fire, including the boiler tubes and the HTS safety

device. While Defendant certainly has provided significant evidence of the history of the refrigerator at issue, the Court finds the issues presented in Norcold's summary judgment motion involve questions of fact that are proper for determination by a jury. Whether Plaintiffs can provide evidence to meet the elements of their strict liability claim will be determined at trial.

### 2. Negligence

In Missouri, the standard for a negligence claim sets forth "that a seller of a product who neither knows nor has reason to know the product is dangerous is not liable in a negligence action for harm caused by the product's dangerous condition because of the seller's failure to discover the danger by an inspection or test of the product before selling it." *Dorman v. Bridgestone/Firestone, Inc.*, 992 S.W.2d 231, 239 (Mo. Ct. App. 1999) (internal citations omitted). However, "if the defect is such that a reasonably prudent seller should have discovered it before selling the product to the consumer, the seller may be held liable for the injuries caused by the defect." *Id.* (holding that based on the operative summary judgment facts, plaintiff produced evidence to make a submissible cause of action in negligence).

Defendant incorporates its argument pertaining to the strict liability claim in its negligence argument. Again, Defendant argues Plaintiffs cannot prove causation because the refrigerator at issue was salvaged, refurbished and substantially altered by Reliable RV. Further, because the HTS safety device was not wired properly, there are more than one intervening and superseding causes that relieve Norcold of liability. While Norcold does not admit its refrigerator caused the fire, it states the re-wiring of the HTS safety device relieves Norcold of any potential liability for a negligence claim.

Again, Plaintiffs argue even though the refrigerator at issue may have had different parts, there is evidence that the boiler tubes were unaltered, were original to the refrigerator and caused

the fire. Further, Plaintiffs argue the superseding intervening law requires that the intervening act "not be foreseeable." The Missouri Court of Appeals has stated, "[t]he mere existence of an intervening act is not decisive. The intervening act must be a superseding cause that is independent of the original actor's negligence and severs the connection between the original actor's conduct and the plaintiff's injury as a matter of law. For an intervening act to relieve the original tortfeasor from liability, the act cannot be a foreseeable consequence of the original act of negligence." *Buchholz v. Mosby-Year Book, Inc.,* 969 S.W.2d 860, 862 (Mo. Ct. App. 1998) (internal citations omitted).

Here, the Court again finds there is a question of fact with regard to whether Plaintiffs can prove the elements of their claim for negligence and further, whether there exists a superseding or intervening cause to relieve Norcold of liability. The Court finds the questions of fact include, but are not necessarily limited to, whether the Norcold refrigerator boiler tubes were in an unaltered state, whether Norcold's product was the cause of the fire, and whether the HTS recall safety device was properly installed.

## DECISION

Wherefore, for the reasons set forth herein, the Court **DENIES** Norcold's Motion for Summary Judgment. (Doc. 123).


**IT IS SO ORDERED.**

Date: October 7, 2016                             */s/ Douglas Harpool*
                                                  Douglas Harpool
                                                  United States District Judge

8